[S. F. No. 1915. In Bank.—June 18, 1903.]

## MATHILDA NIELSEN, Respondent, v. PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY OF NEW YORK, Appellant.

Life Insurance—Renewable Term Policy—Guaranty Fund—Reserve Fund—Construction of Statute against Forfeiture.—The guaranty fund provided for. upon a renewable term policy of life insurance without re-examination, must be construed the same as the "reserve" fund on an ordinary life policy, within the meaning of the New York statute, the purpose and object of which is to prevent a forfeiture of the policy by non-payment of premiums where there was a fund in the hands of the insurers belonging to the insured which might be applied to extend the insurance or purchase a paid-up policy. The spirit of the statute requires a broad meaning to be given to it for the benefit of the insured.

Id.—Agreement for Application of Reserve—Absence of Agreement—Option.—A provision in the statute, that the reserve shall be applied as shall have been agreed in the policy, either to continue the insurance or purchase a paid-up policy, is not to be construed as requiring such agreement, and, in the absence thereof, the statute is intended to give the insured the benefit of an option to have it applied upon an extension or reinsurance, instead of having it returned to him.

Id.—Demand and Surrender of Policy—Construction of Statute.— The provision of the statute, that the reserve "shall, on demand made, with surrender of the policy, within six months after such lapse, be taken as a single premium of life insurance," etc., is not to be construed as requiring that such demand and surrender shall be made by the insured, but it may be made by the beneficiary of the policy after the death of the insured. The statute should receive a liberal and reasonable construction.

Id.—Waiver of Surrender—Denial of Liability—Refusal of Payment.—The communication by the insurance company to the beneficiary of a denial of all liability, and that it would not pay the policy or any part of it, was a waiver of the surrender of the policy under its strict terms.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. George H. Bahrs, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, Bishop & Wheeler, Bishop, Wheeler & Hoefler, and J. F. Bowie, for Appellant.

No demand or surrender of the policy having been made, the plaintiff's right of recovery is barred. (*Knapp* v. *Homœopathic Ins. Co.*, 117 U. S. 411; *Northwestern Ins. Co.* v. *Barbour*, 92 Ky. 427; *Stayner* v. *Equitable Life Assur. Soc.*, 22 Misc. Rep. 53; 49 N. Y. Supp. 380; *Thorensen* v. *Massachusetts Benefit Assn.*, 68 Minn. 477.) This policy has no "reserve" within the meaning of the statute, being only a one-year term policy. (*Resenplanter* v. *Provident Savings Life Ins. Soc.*, 91 Fed. 228.) The "reserve" is money of the insured in the hands of the insurer, which he is entitled to recover upon forfeiture of the policy without his fault. (*New York Life Ins. Co.* v. *Stratham*, 93 U. S. 24; *McDonald* v. *Metropolitan Ins. Co.*, 68 N. H. 6; [1] *McDonnell* v. *Alabama Gold Ins. Co.*, 85 Ala. 409.)

Van Ness & Redman, for Respondent.

The guaranty fund under this policy was a "reserve" fund, and was admitted to be such in defendant's circular. (*Cook* v. *Barr*, 44 N. Y. 156.) "Demand and surrender" were waived by the denial of all liability and expressed determination not to pay. (*Dorr* v. *Phœnix etc. Ins. Co.*, 67 Me. 438; *Wheeler* v. *Connecticut etc. Ins. Co.*, 82 N. Y. 553.[2]) The burden was upon the defendant to prove that notices were sent as required by law. (*De Frece* v. *National Life Ins. Co.*, 136 N. Y. 144; *Osborne* v. *Home Life Ins. Co.*, 123 Cal. 610.)

VAN DYKE, J.—Action to recover twenty-five hundred dollars upon a policy of life insurance. The case was tried with a jury, and verdict rendered for plaintiff for the amount claimed. Judgment was accordingly entered, and from the judgment and order denying a new trial the defendant appeals.

On January 21, 1893, the defendant, in consideration of a premium of $43.70, issued its policy of insurance by which it promised to pay Mathilda Nielsen, wife of John Nielsen, twenty-five hundred dollars, within sixty days after proof of the death of John Nielsen, provided such death should occur

---

[1] 73 Am. St. Rep. 548.    [2] 37 Am. Rep. 594, and note.

on or before the twenty-first day of January, 1894. The policy contained the following clauses and conditions: "And the said society further agrees to renew and extend this insurance upon like conditions, without medical re-examination, during each successive year of the life of the insured from date hereof, upon the payment, on or before the twenty-first day of January in each such year, of the renewal premiums, in accordance with the schedule rates, less the dividends awarded hereon. Failure to pay any premium or semi-annual or quarterly installment thereof when due will thereupon terminate this policy. After deducting the expense charge, which is limited to four dollars per annum on each thousand dollars insured, the society agrees to divide the residue of each renewal premium received by it upon this policy as follows: Such amount as shall be required for this policy's share of death losses will be appropriated as a death fund, to be used solely in settlement of death claims. The remainder thereof will be retained as a guaranty fund. The amounts so retained on account of this policy will be used towards off-setting any increase in the premium on this policy from year to year; or provided this policy, after five full years' premiums have been paid, be terminated solely by non-payment of any stipulated premium when due, eighty per cent of any amount so retained, but not so used, will be applied to extend this insurance, or, if application be made therefor while this policy is in full force and effect, to purchase paid-up insurance." The policy was continued in force by the payment of the premiums when due until January 21, 1896, at which time the premium, although due, was not paid. John Nielsen died February 19, 1896. The complaint contains three counts upon which plaintiff relies. In the first, the payment of the premiums in due time, and the full performance of the contract on the part of the deceased during his lifetime are alleged; in the second, the failure of the defendant to give the notice required by the laws of New York of the time when the premium would be due; in the third, that the policy carried a reserve in amount sufficient to protect it from forfeiture between the date when the premiums became due and the death of Nielsen.

The plaintiff argues in support of the third count that, un-

der the laws of New York, there was a sum exceeding five dollars in the reserve fund which belonged to deceased, and this amount was more than sufficient to purchase temporary insurance from January 21, 1896, up to the date of death. The statute of New York claimed to be applicable is as follows: "Whenever any policy of life insurance hereafter issued by any company organized or incorporated under the laws of this state after being in force three full years, shall, by its terms, lapse, or become forfeited, for the non-payment of any premium or of any note given for a premium, or loan made in cash on the policy as security, or of any interest on such note or loan, unless the provisions of this act are specifically waived in the application and notice of such waiver written or printed in red ink on the margin of the face of the policy when issued, the reserve on such policy, including dividend additions calculated at the date of the failure to make any of the payments above described according to the American Experience Table of Mortality, and with interest at the rate of four and one half per cent per annum, after deducting any indebtedness of the insured on account of any semi-annual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing, shall, on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance at the published rates of the company at the time the policy was issued, and shall be applied as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount, so long as such single premium will purchase temporary insurance for that amount at the age of the insured at the time of lapse; or to purchase, upon the same life, at the same age, paid-up insurance, payable at the same time and under the same conditions, except as to payment of premiums, as the original policy." It will be observed that the statute is, in many respects, similar to section 450 of our Civil Code.

There is no serious contention that there was not on January 21, 1896, in the hands of the insurance company, the amount of $5.10 in excess of the expense charges and death-losses which had not been used by the company towards offsetting any increase in the premium, and which properly be-

longed to the insured. The contention that there was no reserve on the policy is not based on the fact that this money was not on hand, but on the theory that, technically, it was not a "reserve" fund within the meaning of the New York statute. This amount, if properly applicable to that purpose, was sufficient to extend the insurance from the date above given beyond the date of the death of the insured.

Appellant contends, however, that it is a misnomer to call this amount a reserve. The cost of insurance for any year is the actual sum which will reimburse the insurer for its outlay, including death claims and operating expenses. Any excess in the premium over this sum is a fund held by the insurer for the benefit of the insured in certain contingencies. If the policy is for the whole period of life, and having a yearly premium, the excess thus paid in the earlier years of the policy is used to apply on the cost of insurance of the later years, thus reducing the premium and lightening the burden of keeping up the insurance as age advances. If the policy is for life, and requires yearly payments for a certain number of years, the effect is the same; the excess of the first years is applied to reduce later premiums. If, as in this case, there is an unqualified agreement to insure for one year only, accompanied by an additional agreement to renew the insurance from year to year without re-examination, on the payment of a fixed annual or semi-annual premium, and the further agreement that the excess of such premiums over operating expenses and the insured's share of death-losses shall constitute a guaranty fund to apply in reduction of, or as an offset to, later premiums, and after five years to extend the insurance in case of lapse, if there is any excess, the effect is the same. If the policy continues, the excess is used to reduce future premiums; if it lapses, the excess is applicable to a reinsurance, or extension, the same as an ordinary reserve. The only real difference between this policy and an ordinary life policy with respect to the existence of a reserve is, that in an ordinary policy both the reserve and the premiums are calculated on estimated death-losses, based on mortality tables, and this estimate is not corrected by the actual losses as they occur; whereas, under this policy, the premiums are fixed with reference to estimated death-losses, and the guaranty fund,

which is the same as a reserve, is determined by the amount of premiums left remaining after deducting the actual death-losses. It is a mere play upon words to attempt to distinguish the two by calling one a reserve and the other a guaranty fund. There is no substantial difference. The purpose and object of the statute was to prevent a forfeiture of a policy by non-payment of premiums, when there was a fund in the hands of the insurer belonging to the insured which might be applied to extend the insurance or purchase a paid-up policy. The spirit of the statute requires a broad meaning to be given to it for the benefit of the insured. We are of the opinion that the fund on hand classed in the policy as a guaranty fund is embraced within the meaning of the words "the reserve on such policy," as used in the New York statute.

It is claimed that the New York statute has no application to policies of insurance for a single year, with an agreement for reinsurance at a fixed rate, as in this case. What has been said disposes of this claim. The fact that the guaranty fund is substantially the same thing as a reserve clearly makes the statute apply to policies of the class here in question as well as to ordinary life policies. It refers by its own terms to "any policy of life insurance . . . after being in force three years," and there is nothing in its purpose or object, or in the condition of this policy as we have interpreted it, which requires policies of this class to be excepted from the broad meaning of the words here used.

It is also clear that the statute of New York must be considered as a part of the contract of insurance and inserted for the purpose of a construction of the policy, as an additional provision, with the same effect as if it had been originally incorporated therein.

The statute in question provides that the reserve shall be applied "as shall have been agreed in the application and policy," either to continue the insurance or purchase a paid-up policy. It does not appear that either the application or the policy contains any agreement with reference to the application of this reserve. If such agreement was necessary in order to give this part of the statute effect, it would follow that, as the option given by the statute had not been exercised at the

time of taking the policy, the right to exercise it would be gone, and the surplus on hand at the time of the lapse would be really so much money belonging to the insured, and could not be applied either to extend the policy or purchase paid-up insurance. But we do not think the statute can be so evaded, nor is it necessary to hold that the application of this reserve, in one mode or the other, must be determined by an agreement in the policy or in the application for insurance. The statute was clearly intended to give the insured the benefit of such reserve, or surplus, by having it applied upon an extension, or a reinsurance, instead of having it returned to him.

It is not necessary that the demand and surrender of the policy referred to in the statute should be made before the death of the insured. The provision in the statute concerning a "demand made" does not expressly require that this "demand" shall come from the insured. And inasmuch as any other construction of the statute might result in a forfeiture of her rights, we will give the statute a liberal, and at the same time a not unreasonable, construction, and hold that this demand may be made by the beneficiary, the only party really interested in the policy after the death of the insured. The contract of insurance does not require *any* demand. The statute does not say that the demand shall be made in the lifetime of the insured, nor by the insured. It is but natural that the demand should come from the real party in interest, and the legislature could not have intended that it should come from any other source after the death of the insured. In case a choice of a paid-up policy is made, it is to be considered as a policy issued at the date of the lapse, and the same is true where the choice is for an extension of the insurance. In that case the extension is manifestly to be deemed as having been made at the time of the default, although the option to take such extension was not exercised until after the death of the insured. The principle that under such circumstances a demand may be made after the death of the insured was decided in *Wheeler* v. *Connecticut Mutual Life Ins. Co.,* 82 N. Y. 554.[1] In that case the policy provided that upon a lapse or forfeiture the company would grant a paid-up policy for such amount as the dividend would purchase, upon

[1] 37 Am. Rep. 594.

application within one year after the default. The application was made by the beneficiary and after the death of the insured. The court says: "The fact that Vose was dead does not relieve the defendant from liability, as no such contingency by the terms of the policy is provided for as excuse for not granting a paid-up policy. The conditions were, first, that two or more annual premiums should be paid; and, second, that the application should be made within one year after default. All of this has been done, and the company were bound to comply with these conditions. Although the insured was dead, the right to a paid-up policy, or its value, remained to his assignees. If the insured had lived, he was entitled to it, and his assignees succeeded to his rights. The same rule applies as when insurance companies, or their agents, have made contracts to issue policies which have neither been made out nor delivered. In such cases the loss is payable the same as if the policy had been actually issued and delivered."

So far as the surrender of the policy is concerned, we think the conduct of the defendant was a waiver of any surrender that might have been necessary under the strict terms of the policy or of the statute which we have been considering. It is alleged in the complaint, and not denied in the answer, "that immediately subsequent to the death of said John Nielsen the defendant expressly disclaimed and denied any and all liability under or by virtue of said policy arising from the death of said John Nielsen, and informed the plaintiff that it would not pay the amount named in said policy, nor any part thereof."

It is plain from what has been said that the plaintiff was entitled to recover upon the third count of her complaint. It will therefore be unnecessary to consider the other counts of the complaint or the appellant's objection appertaining to them. We can presume, for the sake of upholding the judgment and verdict, that they were based upon the count in the complaint which we have found to be good, and which the evidence supports, and in this view the other counts and the objections that go with them are of no further consequence.

The objections to certain instructions and evidence appertaining to the third count have been carefully examined, and,

so far as they are material, are already answered in the foregoing opinion.

The judgment and order are affirmed.

Shaw, J., Henshaw, J., and Lorigan, J., concurred.

McFarland, J., dissented.

BEATTY, C. J., concurring.—I concur in the judgment. As I construe the stipulation contained in the policy, the defendant agreed to extend it for the full amount, unless the insured prior to its lapse had elected to take a paid-up policy. The insured died after lapse of the policy for non-payment of the premium and without having elected at any time to take a paid-up policy. The agreement to extend thereby became absolute, and to entitle the plaintiff to recover it is only necessary to read into the policy the statutory term of three years in place of the unlawful term of five years.

Rehearing denied.