## NEW YORK LIFE INS. CO. v. NOBLE.

No. 1702. Opinion Filed March 19, 1912.

Rehearing Denied June 4, 1912.

(124 Pac. 612.)

1. **INSURANCE — Forfeiture — Nonpayment of Premiums — Rights After Default.** Under the statute of New York (Laws 1909, c. 33, sec. 88 [Consol. Laws 1909, c. 28]), regulating life insurance, the provision that in case of lapse or forfeiture for nonpayment of a premium when due, etc., the reserve "shall, on surrender of the policy and demand made, within six months after such lapse, be taken as a single premium of life insurance," etc., is not to be construed so as to limit the right to make such surrender and demand to the insured alone; under it the beneficiary of the policy may make such surrender and demand, after the death of the insured, within the period named.

2. **SAME.** Where the statute controlling a life insurance policy, which has lapsed for nonpayment of a premium when due, gives the insured the option to within six months surrender the policy and have the net accumulated reserve on the policy applied as a single premium in extending the policy for such term as the reserve will purchase, but provides that such extended insurance shall not participate in the profits of the company, **held,** that under a tontine policy contract, which on its face covenanted that, in the event that it became a death claim within the tontine period, all payments of premiums should be paid to the beneficiary together with the amount named in the policy, and where such option was exercised within the time allowed, and the insurance was extended, and the insured died within the tontine period and before such extension expired, the beneficiary had the right to recover, in addition to the amount named in the policy, the premiums that had been paid, as the agreement to pay such in the face of the policy did not involve any question of profits of the company or a participation therein.

(Syllabus by Brewer, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by Eva Noble against the New York Life Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*James H. McIntosh, Potterf & Walker,* and *Locke & Locke,* for plaintiff in error.

*Cruce, Cruce & Bleakmore,* for defendant in error.

Opinion by BREWER, C.   This is a suit on a life insurance policy.   The material facts are:   On June 21, 1891, the plaintiff in error, hereafter called the company, issued its policy of insurance on the life of Edward T. Noble in the sum of $1,000 on "the twenty payment life mortuary dividend plan," naming Eva Noble, wife of the insured, the defendant in error 'herein, as beneficiary.   She will hereafter be called plaintiff.   The annual premiums on this policy were $41 by its terms payable on May 21st each year for the full term of twenty years, unless said policy should in the meantime become a death claim, in which event it was provided in it: "If this policy shall become a claim by death, within the tontine period, above specified, a mortuary dividend will be paid therewith, equal to the total amount of premiums paid."   That on June 18, 1894, a supplemental agreement was entered into between the insured, the plaintiff, and the company, by which the date of the payment of annual premiums was changed to November 21st of each year.   That on November 21, 1899, another agreement was entered into between the parties, under which the "benefits of its (the company's) accumulation policy plan" were extended to this policy, with the understanding that, "except as modified by such benefits, said policy should remain unchanged."   A certificate to this effect was issued by the company which provided that the company would make advances as loans on said policy at the fifth or any subsequent anniversary of the insurance, upon the assignment to it of the policy as collateral security, etc. That on February 8, 1900, the company loaned to the insured and the plaintiff $120 on the policy, which was pledged to and deposited with the company to secure the loan.   That the insured paid on said policy sixteen full annual premiums of $41 each, but

defaulted and failed to pay the annual premium due November 21, 1907. That after such default in the payment of premium and on February 22, 1908, when the insured was sick, an application was made to the company for a reinstatement of the policy, accompanied with remittance of $41.50 to cover the annual premium past due, and interest thereon from date of default. This sum was retained by the company, temporarily, pending action on the reinstatement of the policy. On March 7, 1908, a demand for full medical examination of the insured was made by the company; this demand reached the insured when sick unto his death, which occurred on March 14, 1908. Several months after the death of the insured, checks for the amount of this annual premium and interest were sent to plaintiff, but were never accepted or used by her. That, within a short time after the death of the insured, the company tendered to plaintiff the sum of $471, the amount of paid-up insurance purchased with the reserve accumulations of the policy, calculated at the date of default, and applied in payment of premiums. This was refused. The same sum was tendered in the company's answer later and is admitted to be due plaintiff. Suit was brought on March 4, 1909, in the district court of Carter county, and judgment was demanded for the full face value of the policy, $1,000, and for the full sum of the annual payments of premiums made on the policy amounting to $738, less the loan of $120 made on the policy.

The company answered setting up the issuance of the policy, the supplemental agreements, the loan to insured, setting out certain portions of these writings, and alleged the default in the payment of the annual premium due November 21, 1907, and the lapse of the policy at that date because of such nonpayment of premiums. The company further alleged that by the terms of the policy the contract should be construed according to the law of the state of New York, specially pleading the parts of such law applicable. The company alleged that the reserve on said policy computed according to the New York law, at the date of the default of insured, was $435.77, and that, after deducting the loan of $120, it left a net reserve of $315.77. The company

further alleged that after the default the insured never surrendered the policy or made any demand for a settlement of his rights under the policy according to either plan allowed under the said law within the six months allowed, but that the company had waived such demand, and upon the lapse of the policy had given the insured the benefit of paid-up insurance for the amount the net reserve on the policy of $315.77 would purchase at the date of default of insured, and that such reserve, taken as a single premium, would purchase paid-up insurance in the sum of $471, which it tendered.

The plaintiff filed a reply in which it was alleged that the policy at the time of the alleged lapse was in the possession of the company; that, if the court should hold there was a lapse, then that the insured, or, after his death, plaintiff, as beneficiary, had the right under the New York law, within six months from such lapse, to elect to use the net reserve accumulations of the policy in purchasing extended insurance in the full amount of the policy for such time as such reserve would pay for as a single premium and alleges that the plaintiff made such election within such period to have the policy so extended for such term. Plaintiff denies the right of the company, after having waived the demand, to make an election for the insured or plaintiff as beneficiary by which it sought to give plaintiff merely the amount of paid-up insurance the reserve would purchase, as it claimed it had done. The plaintiff admitted that the contract was to be construed under the laws of New York, and both parties tried the case in the lower court and brief it here upon that theory.

We think that it appears from the facts and pleadings stated above that the various questions in this case are to be finally determined from a construction of the New York law relative to "lapsed or forfeited policies." We do not consider it necessary to set out the various provisions of the policy, or of the supplemental contracts or of the loan contract, for whatever they are, relative to the lapsing or forfeiture of the policy, they yield to the law governing such cases. The law of New York is pleaded and proven, and, so far as it appears applicable here, is as follows:

Sec. 88. "Surrender Values of Lapsed or Forfeited Policies.—Whenever any policy of life insurance issued after January first, eighteen hundred and eighty, by any domestic life insurance corporation after being in force three full years, shall, by its terms, lapse or become forfeited for the nonpayment of any premium or any note given for a premium or loan made in cash on such policy as security, or of any interest on such note or loan, the reserve on such policy computed according to the American experience table of mortality at the rate of four and one-half per cent. per annum shall, on demand made, with surrender of the policy within six months after such lapse or forfeiture, be taken as a single premium of life insurance at the published rates of the corporation at the time the policy was issued, and shall be applied, as shall have been agreed in the application or policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse or forfeiture, or to purchase upon the same life at the same age paid up insurance payable at the same time and under the same conditions, except as to payment of premiums, as the original policy. If no such agreement be expressed in the application or policy, such single premium may be applied in either of the modes above specified at the option of the owner of the policy, notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy. The reserve hereinbefore specified shall include dividend additions calculated at the date of the failure to make any of the payments above described according to the American experience table of mortality with interest at the rate of four and one-half per cent. per annum after deducting any indebtedness of the insured on account of any annual or semi-annual or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing. The net value of the insurance given for such single premium under this section, computed by the standard of this state, shall in no case be less than two-thirds of the entire reserve computed according to the rule prescribed in this section after deducting the indebtedness as specified; but such insurance shall not participate in the profits of the corporation." (Laws [N. Y.] 1909, c. 33 [Consol. Laws 1909, c. 28]).

It was not agreed in the policy or application how the reserve should be applied; therefore it is clear that under this law, upon the failure to pay the annual premium due November 21,

1907, notwithstanding such default, the insured had the right, at any time within six months after such default, to surrender the policy and demand, at his own option, either that the accumulated reserve on the policy, less the loan, be applied to continue the insurance in force in the full amount of the policy so long as such reserve applied as a single premium would purchase temporary insurance for that amount at the age of the insured at the time of the lapse, or to have such reserve applied to the purchase of whatever amount of paid-up insurance such reserve would pay for as a single premium. Plaintiff contends that not only had the insured the right of such election as to settlement, but that this right, upon the death of the insured, during the six months period without its being exercised, inhered in the beneficiary, and that within the period she made the election. Plaintiff then further contends that, this election having been made, the policy for its face value, including all the premiums insured had ever paid, was continued in force, and that she was entitled to recover same. Defendant contends that, inasmuch as the insured had made no election as to settlement at the time of his death within the six months period, it had the right to select the kind of settlement it would make, and that it chose to purchase paid-up insurance with the net reserve in its hands, and that it did so, and that amount was $471.

Under these various contentions the cause was tried by agreement of the parties by the court and, upon a finding of facts favorable to plaintiff, it gave her judgment for the full amount of the policy and for all the premiums ever paid on it, less the loan, amounting to $1,618. To correct alleged errors of the court in its findings of fact and conclusions of law, this appeal is brought.

That the insured after default had the right under the law to surrender the policy and demand extended insurance is clear. That he died before the expiration of the time within which this election of settlement could be made is admitted. The company waived surrender and demand, however, when it attempted to convert the policy into a paid-up life policy.

The original policy was a nonparticipating one; it was for $1,000, and, if the insured died within the twenty year (tontine)

period, the beneficiary received, in addition to the amount named, all the payments of premiums made by the insured. But, by the supplemental agreement, the policy contract was changed, so that thereafter it participated in the accumulated reserve, but this was an addition to the policy and did not change or in any wise modify the amount to be paid under the policy, if death occurred within the twenty-year period, except to add the accumulation thereto. So, if the default had not occurred upon death of insured at the date he died, the amount due under the policy would have been its face value of $1,000 and all premiums paid on it, together with the accumulated reserve due on it, but, default having occurred, what would have been the result upon the election by the insured to have the reserve applied to extending the policy for such period as the reserve would pay for, taken as a single premium, and supposing this was all done during the life of the insured? The result would have been that the reserve accumulations in the hands of the company would have been wiped out by paying the loan and extending this insurance as nonparticipating insurance, according to the face of the policy. If the insured died within the period of such extension and within the twenty-year period, the beneficiary would have been entitled to the face of the policy but could not have participated in the profits of the company. If he outlived the period of the extension, then nothing would be due under the policy. Then, if such would have been the rights of the parties if the insured had, after default and within the six months, elected to take extended insurance, the rights of the beneficiary in this case are the same, provided she had the right (the insured having died within the six months period without exercising it) to make the election as is claimed. Did she have the right?

The provision in the statute concerning "demand made" does not expressly require that this "demand" shall come from the insured. Where there is no agreement in the application or policy, the statute provides, as has been seen, "such single premium may be applied in either of the modes above specified at the option of the owner of the policy," etc.

In the case of *Neilsen v. Prov. Savings L. Ass'n Soc.,* 139 Cal. 332, 73 Pac. 168, 96 Am. St. Rep. 146, the question of the

right of the beneficiary to exercise the option provided by the New York statute was before and squarely decided by the court. Syllabus "D" is as follows:

"The provision of the statute that the reserve 'shall on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance,' etc., is not to be construed as requiring that such demand and surrender shall be made by the insured, but it may be made by the beneficiary of the policy after the death of the insured. The statute should receive a liberal and reasonable construction."

This doctrine is sustained in *Wheeler v. Connecticut Mutual Life Ins. Co.*, 82 N. Y. 543, 37 Am. Rep. 594. Counsel for the company cite no authority opposed to the above rule, but content themselves with saying that it is doubtful if such rule obtains.

The court found as a fact that the beneficiary had made the election, choosing as a settlement extended term insurance. The finding of fact is as follows:

"Fifth. I find that at the said time the tender was refused, and that the plaintiff at that time advised the defendant that she elected to continue the insurance policy from the 21st day of November, 1907, to such time as the amount of reserve then on hand, less indebtedness due defendant, taken as a single premium, would buy upon the life of the insured at his then age and for the sum of one thousand dollars, and that on such day the plaintiff notified the defendant of such election. This was within six months after the 21st day of November, 1907."

Therefore we think it follows that the rights of the beneficiary are the same as if the insured had defaulted, and then within the six months elected to take, in settlement of his rights, an extension of the policy for such time as the net reserve in the company's hands would pay for as a single premium, and that the sum recoverable is whatever the policy covenanted to pay except as to participation in the profits prohibited by the statute. The policy contract was to pay its face value and to return all the premiums the company had received if the insured died within the twenty-year period. That he did so die is admitted. This sum it ought to pay.

We do not think the agreement in the face of the policy to return the premiums was an agreement relating to profits unless it could be said that the total of all premiums paid are profits, which no one would contend. The agreement was to return all payments made; this amount did not depend on profits, dividends, or accumulations.

Counsel contend that the supplemental agreement eliminated the mortuary dividends (the return of all premiums if death occurred within the twenty-year period), but its argument is not convincing on this point. It says:

"The elimination of the provision for mortuary dividends was accomplished by omitting all mention of it in a contract which embraced a complete and detailed scheme," etc.

The agreement referred to, which it is admitted did not mention this matter, stated on its face: "Except as herein expressly modified, the terms on said policy No. 407,707 remain unchanged." It may appear that this was an unwise contract upon the part of the company, but it was not; it was familiar with mortuary statistics; it merely wagered that the insured would outlive the twenty-year (tontine) period.

It will be borne in mind that the company did not claim to have forfeited this policy; its claim is that it selected the mode of settlement and bought, with the policy reserve in its hands, fully paid-up life insurance—that is, of the various settlements the insured or the beneficiary could make, the company chose to make and did make for them the most disadvantageous settlement possible under the law and the facts of this case. It had no such right, the statute does not give it such, nor has its learned counsel cited any authority to support the doctrine it asserts in this matter.

Believing that the finding of facts complained of was justified under the evidence, and finding no substantial error in the trial court's conclusions of law, the case should be affirmed.

By the Court: It is so ordered.