GRACE H. RUSTIN, APPELLEE, v. ÆTNA LIFE INSURANCE
COMPANY, APPELLANT.

FILED JUNE 5, 1915. No. 18004.

1. **Insurance:** EXTENDED INSURANCE: COMPUTATION. The amount of
extended life insurance, where assured dies during default in the
payment of an annual premium, having made a loan upon his policy,
should be computed according to the terms of the contract, if valid
and unambiguous.

2. ——: PROVISION FOR LOAN: CONSTRUCTION. Money loaned to the
insured under the policy loan contract described in the opinion con-
stitutes "an indebtedness to the company against the policy," as
this phrase is used in the contract.

3. ——: PROVISION FOR EXTENDED INSURANCE: CONSTRUCTION. A life
insurance policy provided that if default is made in the payment
of premium after premiums have been paid for three years or more,
and there is no indebtedness to the company against the policy, it
shall be extended as temporary insurance for the full sum insured
during a specified time, but that, if there is such an indebtedness,
the amount of extended temporary insurance shall be reduced in the
proportion which such indebtedness bears to the cash surrender
value. *Held*, where a loan made to insured had not been paid at
the time of default, the beneficiary was entitled only to temporary
insurance in such proportion.

APPEAL from the district court for Douglas county:
ABRAHAM L. SUTTON, JUDGE. *Reversed with directions.*

*Greene, Breckenridge, Gurley & Woodrough,* for appel-
lant.

*Mahoney & Kennedy,* contra.

LETTON, J.

From a judgment of the district court in favor of the
plaintiff on a policy of life insurance issued on the life
of her husband, Frederick Rustin, defendant appeals. At
the close of the trial in the district court, there being prac-
tically no disputed questions of fact, each party moved for
a directed verdict. The motion of defendant was over-

ruled, and that of plaintiff sustained, and judgment rendered accordingly.

The sole question involved in this appeal is the amount of defendant's liability under the policy of insurance, which, with a loan agreement secured thereby, constituted the entire contractual relations between the parties. The policy was issued November 23, 1903, for $10,000, in consideration of an annual premium of $294.40, payable annually in advance. The principal sum is made payable "on the surrender and discharge of this policy either at the end of the policy year falling nearest to age eighty-five, if the insured is then living, or, on receipt and approval of proofs of the death of the said insured during the continuance of this policy, and any indebtedness to said company on account of this policy or any premium for the current year remaining unpaid shall first be deducted therefrom." It is further provided: "This policy is issued and accepted subject to the conditions, provisions, and benefits printed on the reverse of this page, which are hereby referred to and made a part hereof." One of these is: "If any subsequent premium be not paid when due then this policy shall cease and determine subject to the nonforfeiting features hereinafter described." A grace of 30 days for the payment of premium is also allowed. Rustin paid three annual premiums, but made default in the payment of the fourth annual premium, which was due on November 23, 1906. He died September 2, 1908, within the period for which he was entitled to extended insurance under the nonforfeiture provisions of the policy hereinafter considered. On July 9, 1906, and before default in the payment of the premium, Rustin borrowed from the defendant the sum of $210, payable on demand, and executed a loan contract therefor, signed by himself and Mrs. Rustin. In this contract they acknowledged the amount of the note, with interest, "to be an indebtedness to said Ætna Life Insurance Company, on account of contract No. 60269, issued by said company on the life of Frederick Rustin, which contract, with all right, title and interest therein, and all benefit and advantage

to be derived therefrom, is hereby assigned to said company as security for this indebtedness." It was also provided therein that if the note or any interest thereon "remains unpaid thirty days after it becomes due the right to pay further premiums under said contract shall .cease." Other provisions with respect to the rights of the parties after default of the payment of the note or the interest are contained therein; but we consider that they are not material in this controversy, since no demand had been made and no default had occurred in the obligation of this contract at the time that Rustin defaulted in the payment of the fourth annual premium on the policy. The rights of the parties as to extended insurance and the amount thereof must be determined, therefore, by the conditions of the policy contract alone.

The controversy is not as to the length of the period of extended insurance, but it is as to the amount of insurance to which Rustin was entitled during the period of extension. Plaintiff claims, and the district court held, that the full amount of $10,000, less the indebtedness of $210, with interest, as provided in the loan contract mentioned, is due, while defendant asserts that under the provisions of the policy the amount of extended insurance to which the policy holder is entitled is $1,356.

The provisions in the policy which are decisive of the issues are as follows:

"Extension of Full Sum Insured.

"Section 4. If default occurs in the payment of any premium under this policy after the premiums have been paid for three years or more, this policy shall then cease as to the right to pay further premiums, but shall, if there is no indebtedness to said company against it, be extended as temporary life insurance for the full sum hereby insured during the time specified in the following table, reckoned from the time when the first unpaid premium became due, at the expiration of which time it shall wholly cease and be void, except for the endowment value, if any, shown by the next column of said table payable only at the expi-

ration of the endowment term if the insured is then living. Should the death of the insured occur within three years after the time when the first unpaid premium fell due and while this policy is in force as temporary life insurance, there shall be deducted from the amount otherwise due from said company the premiums that would have been paid had there been no default in the payment of premium, with interest thereon.

### "Paid-up Policy.   Cash Surrender Value.

"In lieu of such extended insurance a paid-up nonparticipating stock policy will be issued for the amount shown by the following table, or, at the expiration of the fifth or of any subsequent policy year, said company will pay the amount of cash shown by the following table; provided in either case that this policy be surrendered to said company and a written application made for said paid-up policy or cash value within three months after the time when the first unpaid premium became due. Said paid-up policy shall bear the date of its issue and be due and payable in event of death as herein provided, or at the expiration of as many years from its date as there are years of this endowment term less the number of full years expired under this policy.

### "Loan.

"Section 5.   After the expiration of three years from the date of this policy, and before default in the payment of premium, said company will loan upon the same the amount shown by the following table."

"The figures given in this table are for one thousand dollars of insurance, and the values for insurance of a greater or less amount can be calculated therefrom. The table is based on the assumption that there is no indebtedness against the policy and that all the premiums have been paid to the end of the policy year for which the value is given.

"Directions Concerning the Use of the Table.

"If there is any indebtedness to the company against the policy, the loan or the cash surrender value will be reduced by the amount of said indebtedness, and the amount which shall be extended as temporary life insurance (also the endowment value, if any) or the amount of paid-up policy to be issued will be reduced in the proportion which said indebtedness bears to the cash surrender value hereof.

"For a loan or cash surrender value the policy must be unincumbered by the interest of minor children and a valid loan note or surrender papers must first be executed under such regulations as are prescribed by the company.

"In determining the extension, the paid-up policy, the cash or loan value, premiums paid for entire years only will be considered."

The policy table of values, on the original policy, is shown at the right of and directly opposite to the above "Directions Concerning the Use of the Table."

"Table of Values per $1000 of Insurance.

Non-participating
Life (End't at 85).                          Issued at age 34.
Premiums 20 yrs.

| At End of Year | Extended Insurance | | | Paid-up Policy | Loan | Cash Value |
| | Yrs. | Days | Endowment Value | | | |
|---|---|---|---|---|---|---|
| 3 | 2 | 321 | | $ 89 | $21 | |
| 4 | 5 | 167 | | 148 | 40 | |
| 5 | 7 | 342 | | 206 | 61 | $68 |

While the cash surrender value after three premiums have been paid is not stated in the table, it is admitted that it amounted to $234 on this policy.

Rustin made no demand within three months after default for a paid-up policy, and under the above provisions

the policy became automatically extended for the time fixed in the table, to wit, 2 years and 321 days. The plaintiff contends that the provisions upon the face of the policy for the payment of $10,000 at its maturity and the further provision that "any indebtedness to said company on account of this policy or any premium for the current year remaining unpaid shall first be deducted therefrom" are inconsistent with the provisions with respect to the deduction of indebtedness found in the quoted sections, and that the only manner in which they can be reconciled is to treat the expressions "indebtedness against the policy" and "indebtedness on account of the policy" as referring to different kinds of debt, and that, if the indebtedness is one "on account of the policy," it "is simply to be deducted from the face of the policy and the balance paid." We see no reasonable ground for taking this position. The expressions, "indebtedness to said company on account of this policy," "indebtedness to the company against the policy," the "company will loan upon the" policy, seem to us to include such an indebtedness as is here involved, and such as is contemplated both on the face of the policy and in the quoted provisions on the back of it. Other provision is made on its face for the deduction at maturity of "premiums for the current year remaining unpaid." It is conceded by plaintiff that no default in the payment of the principal or interest of the loan occurred. None of the contingencies in the loan contract, arising on default, have any bearing on the question and the case must be decided by a consideration of the policy alone.

The basic principle upon which so-called "old line" level premium life insurance is conducted requires that the insurer shall collect each year from the insured an amount over and above the actual current cost of carrying the insurance of each individual in order to provide a fund for the future increased cost due to advancing age. This fund is usually denominated the "reserve," and is often regulated by statute. In the policy under consideration this term is not used, but the principle applies. This is the fund from which loans are made, surrender values are paid in cash,

or which is used to carry term insurance in case of default for the length of time set forth in the table.

Three contingencies are provided for in the policy: First, the amount that the company shall pay at maturity when there is no default and no indebtedness; second, what it shall pay when there is no default and an outstanding indebtedness; third, the amount to be paid when default has been made and a part of the reserve has been withdrawn by a loan on the policy. When these three conditions are distinguished, the purport of the policy seems plain, and the solution becomes easy, though, as in all life insurance contracts, the language necessarily is technical.

The agreement upon the face of this policy to pay $10,000 at death assumes and is based upon the idea that no default has been made in the payments provided for by contract. The company agrees to pay $10,000 at maturity, but "any indebtedness to said company on account of this policy" shall first be deducted therefrom, so that, if no default had been made in the payment of the premiums, the $10,000, less $210 and interest, would then be due. The provision as to a deduction of unpaid premiums for the current year evidently refers to premiums payable in instalments, or as to which grace has been allowed, and not to any premiums as to the payment of which an absolute default has been made, since it is also provided that the policy "shall cease and determine subject to the nonforfeiting features."

Those conditions upon the back of the policy which are involved here have reference to the rights of the assured after a default has been made in the payment of premiums. If there is no indebtedness, the cash surrender value or reserve in the hands of the company is used to carry extended insurance for the full amount named in the policy for the length of time which it will pay for as a single premium at current rates, or, if the policy holder desires, he may take a paid-up policy for the amount it will purchase, or it may be surrendered to him in the form of cash, each of which amounts is set forth in the table. If the policy holder withdraws the whole of the reserve in the

form of cash surrender value, this ends his insurance; if he borrows and thus withdraws a portion, when he makes default in the payment of premium, the remainder is used to purchase extended insurance, or, as it is expressed in the policy, "the amount which shall be extended as temporary life insurance * * * will be reduced in the proportion which said indebtedness bears to the cash surrender value," which is the same thing. When, as in this case, nearly 90 per cent. of the reserve is taken out, then the amount of insurance must inevitably be reduced in the same proportion. The automatic operation of this provision of the policy is set in motion by a default in payment of the premium and by a failure, within three months after default, to elect to take a paid-up policy instead of extended insurance. The time for which the insurance will be extended, or the amount of the paid-up insurance, is definitely fixed and determined in the policy in all cases where it was possible so to fix and determine the time and amount in advance, but in all cases of indebtedness the continued or paid-up insurance is dependent upon the amount of the indebtedness. The fact of an indebtedness to the defendant does not forfeit the right to continued or paid-up insurance, but simply leaves the amount of the paid-up insurance, or the amount to be extended, dependent upon a computation to be made when the amount of the indebtedness is determined. *Taylor v. New York Life Ins. Co.*, 197 N. Y. 324. This case considered a similar provision to that in the policy in suit here. If after default Rustin had elected to take a paid-up policy, it would not have been for $890, but for the amount that the money left in the company's hands after paying his loan would purchase.

The fact that a loan has been made does not alter the conditions. Such a loan is not like an ordinary loan, secured by mortgage or personal security. It is in the nature of a withdrawal of the reserve, *pro tanto,* for the reason that, under the terms of the contract, the insured is entitled at any time to demand and receive a loan, and

he alone has the option of deciding whether he will ever repay it or not. Of what avail would it be to the insurance company to collect the amount of the loan when the borrower could at once, by virtue of the contract, demand and receive a new loan for the same amount? The practical operation of the loan is to withdraw the reserve, at the option of the policy holder as to repayment.

The testimony shows that, as soon as the net amount of the reserve in the hands of the company was ascertained by computation, the amount of insurance for the time specified in the policy was determined, the loan was paid, and an entry made upon the books of the defendant showing the satisfaction of the debt and the extension of the insurance for the amount fixed by the contract for the specified period. Similar action by an insurance company and policy provisions having the same effect were upheld in *Sharpe v. New York Life Ins. Co.*, 5 Neb. (Unof.) 278. Under somewhat similar provisions the opinion in *Rye v. New York Life Ins. Co.*, 88 Neb. 707, holds that there is no uncertainty in the contract, and that, since the assured had borrowed from the company the full amount of the reserve before his death, there was no fund in the hands of the company to carry extended insurance, and that therefore the policy lapsed upon default. A rehearing was granted, and the policy held to be in full force at the time of death upon another ground, but the principles announced in this opinion were not set aside nor departed from. *Bryant v. Mutual Benefit Life Ins. Co.*, 109 Fed. 748, *Omaha Nat. Bank v. Mutual Benefit Life Ins. Co.*, 84 Fed. 122, *Dibrell v. Citizens Nat. Life Ins. Co.*, 152 Ky. 208, *Rife v. Union Central Life Ins. Co.*, 129 Cal. 455, and *Blalock v. Empire Life Ins. Co.*, 13 Ga. App. 486, construe policy provisions which, while couched in language slightly different, are governed by the same principles as those in the policy here. Contract provisions of the nature of these have been inserted in policies within recent years, either voluntarily, by insurance companies of the highest class, or involuntarily, by reason of statutory enactment in a

number of states. These provisions are for the benefit of
the insured, since by replacing his reserve before default,
even after sickness has intervened, and his physical con-
dition has become such as would preclude him from ob-
taining new insurance, his insurance stands as if no loan
or withdrawal ever had been made, and, if no default is
made, on maturity the debt is deducted from the amount
payable on the face of the policy. It is a well-known fact
that most policies of life insurance entered into prior to
the last fifteen or twenty years contained drastic provi-
sions as to forfeiture whereby the insured lost his entire
reserve if he made default in the payment of premiums. It
is a matter of common knowledge that, under the pressure
of public opinion, such provisions have been gradually re-
laxed. In an examination made of the policy provisions of
51 representative insurance companies, it is shown that all
these companies have such nonforfeiture provisions. Yale
Readings in Life Insurance, p. 262. It is also pointed out
(pp. 272-274) that statutory provisions have been adopted
in more than 15 states which provide for the ascertain-
ment of the amount or time of extended insurance on de-
fault and for the deduction of indebtedness, on practically
the same plan as provided for by this policy. Indeed, the
new Insurance Code of Nebraska, in subdivision 9, sec.
3238, Rev. St. 1913, contains a like requirement for poli-
cies issued after it takes effect.

Courts should interpret life insurance contracts in such
a way that they can in all instances be carried out, and
fair dealing and good faith should be upheld both for and
against the insurer. We must remember that, if we take
an undue amount of the assets of the company to pay one
policy holder, we are thereby lessening the protection af-
forded to all other policy holders. The amount tendered
by the amended answer seems to be the amount due under
the contract, and the judgment should be for that sum.

The judgment of the district court is therefore reversed
and the cause remanded, with directions to render judg-
ment against defendant for the sum tendered in its

amended answer and for costs up to that time; subsequent costs and costs in this court to be taxed to plaintiff.

REVERSED.

MORRISSEY, C. J., not sitting.

FAWCETT, J., dissents.

HAMER, J., absent and not voting.