[Civ. No. 5137.   Third Appellate District.—October 19, 1934.]

NELLIE G. METCALF, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Appellant.

Knight, Boland & Riordan, F. Eldred Boland and J. W. Radil for Appellant.

Clarence N. Riggins for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment against the defendant for and on account of a certain life insurance policy issued by the defendant upon the life of her husband, Charles C. Metcalf. From this judgment the defendant appeals.

On March 14, 1921, the insurance company issued its policy to Charles C. Metcalf, whereby it promised to pay to respondent, as beneficiary, upon proof of death of Charles C. Metcalf, $1,000, less any indebtedness existing against said policy, in consideration of the application and the payment of a quarterly premium of $14.28, on the fourteenth day of every March, June, September and December thereafter until twenty years' premiums should have been paid. All of the premiums were paid upon the policy up to and including June, 1932. The premium falling due on September 14, 1932, was not paid. Charles C. Metcalf, the insured, died on the twenty-first day of October, 1932. The policy provided for thirty days' grace in the payment of overdue premiums. No such payment, however, was ever made. During the life of the policy the insured had borrowed thereon the sum of $402.69, giving a note therefor signed by himself, and also by the plaintiff in this action. At the expiration of the thirty days' grace which we have just mentioned, it is contended by the appellant that the net reserve or cash surrender value of the policy was the sum of $26.13. After the death of the insured the plaintiff tendered to the appellant the amount of the indebtedness, but payment was refused, the contention of the appellant being that the policy was no longer in force.

The policy involved in this action contains the following provisions alleged to be applicable where the insured has defaulted in the payment of any premium, to wit:

"Upon failure to pay any premium or any part thereof when due, this policy, except as otherwise provided herein, shall immediately lapse. If, however, the lapse occurs after three full years' premiums shall have been paid, the owner hereof, provided there be no indebtedness hereon, shall, upon

written request filed with the Company at its home office together with the presentation of this policy for legal surrender or for endorsement within three months from the due date of premium in default, be entitled to one of the following options: First—a cash surrender value. The Company in its discretion may defer the payment of the cash value for a period not exceeding ninety days from the date of the application therefor. Second—To have the insurance continued for a reduced amount of non-participating paid-up endowment insurance (including any existing additions to the credit of the policy), payable at the same time and under the same conditions as this policy. Such paid-up insurance shall have an increasing cash surrender value equal to the full reserve at the date of surrender, or a loan value up to the limit of the cash surrender value. Interest on loan under such paid-up insurance shall be payable annually in advance to the end of the policy year at the rate of six per centum per annum. Third—To have the insurance continued for its original amount as term insurance in whole number of months from due date of premium in default, without participation, and without the right to loan, and if the sum applicable to the purchase of such term insurance shall be more than sufficient to continue the insurance to the end of the endowment period named in the policy, the excess shall be used to purchase in the same manner non-participating paid-up pure endowment (in even dollars for each one thousand dollars of insurance) payable at the end of the endowment period and on the same conditions as this policy. The extended contract under this option may be surrendered for its full reserve at the date of surrender. If the owner shall not, within three months from due date of premium in default, surrender this policy to the Company at its home office for cash surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option. . . . Any indebtedness of the Company under this policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance and any pure endowment payable at the end of the endowment term, in such proportion as the

indebtedness bears to the cash value at the date of premium in default.''

It will be observed that these options are conditioned upon the following words: *"Provided there be no indebtedness hereon."* The validity of the options so conditioned will be considered later, together with section 450 of the Civil Code.

The policy likewise provides in paragraph number 6, that: ''The whole, or any part of the indebtedness may be repaid at any time while the policy is in force.''

■ The plaintiff sought to avail herself of the privileges contained in the third option set forth in the policy, corresponding very closely to the provisions of section 450 of the Civil Code. In this particular it is contended by the appellant that the insured not having exercised any option, the right of the parties in relation thereto became fixed on the date of the death of the insured. Even if we were to conclude that the third option set forth in the policy is valid, the contention of the appellant in relation to the exercise of the option is untenable. It is true that in some states it is held that if the insured does not exercise such option after default, no such option can be exercised after his death. That, however, is not the law in this state.

In *Neilsen* v. *Provident Savings Life Assur. Soc. of New York,* 139 Cal. 332 [73 Pac. 168, 96 Am. St. Rep. 146], where a like question was presented for consideration, the court disposed of the contention in the following language: ''It is not necessary that the demand and surrender of the policy referred to in the statute should be made before the death of the insured. The provision in the statute concerning a 'demand made' does not expressly require that this 'demand' shall come from the insured. And inasmuch as any other construction of the statute might result in a forfeiture of her rights, we will give the statute a liberal, and at the same time a not unreasonable, construction, and hold that this demand may be made by the beneficiary, the only party really interested in the policy after the death of the insured. The contract of insurance does not require *any* demand. The statute does not say that the demand shall be made in the lifetime of the insured, nor by the insured. It is but natural that the demand should come from the real party in interest, and the legislature could not have intended that it should come from any other source after the death of

the insured. In case a choice of a paid-up policy is made, it is to be considered as a policy issued at the date of the lapse, and the same is true where the choice is for an extension of the insurance. In that case the extension is manifestly to be deemed as having been made at the time of the default, although the option to take such extension was not exercised until after the death of the insured. The principle that under such circumstances a demand may be made after the death of the insured was decided in *Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y. 554 [37 Am. Rep. 594].''

In *Knapp* v. *John Hancock Mut. Life Ins. Co.*, 214 Mo. App. 151 [259 S. W. 862], the Supreme Court of Missouri held that the beneficiary's right of election between options was not qualified by limitations placed upon the insured. The language used in the opinion in that case is applicable here, to wit: ''It is very generally held, in cases where the options given in the policies were substantially the same as in the policy under review in the instant case, that the right of election under the options given is a property right, not a mere privilege purely personal to the insured, and that, in case the insured die after default and within the period allowed for making his election, the right of election survives to the beneficiary. We think the holding is founded upon the soundest sort of judicial reasoning. (*Veal* v. *Security Mutual Life Ins. Co.*, 6 Ga. App. 721, loc. cit. 726 [65 S. E. 741]; *McEachern* v. *New York Life Ins. Co.*, 15 Ga. App. 222, loc. cit. 231 [82 S. E. 820]; *State Mut. Life Ins. Co.* v. *Forrest*, 19 Ga. App. 296 [91 S. E. 428]; *Nielsen* v. *Provident Savings Life Assurance Society*, 139 Cal. 332, loc. cit. 338 [73 Pac. 168, 96 Am. St. Rep. 146]; *Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 N. Y. 543, loc. cit. 554 [37 Am. Rep. 594]; *New York Life Ins. Co.* v. *Noble*, 34 Okl. 103 [124 Pac. 612, 45 L. R. A. (N. S.) 391]; *Dorr* v. *Phoenix Mutual Life Ins. Co.*, 67 Me. 438; *Lenon* v. *Mutual Life Ins. Co.*, 80 Ark. 563, loc. cit. 567 [98 S. W. 117, 8 L. R. A. (N. S.) 193, 10 Ann. Cas. 467].''

In *New York Life Ins. Co.* v. *Noble*, 34 Okl. 103 [124 Pac. 612, 45 L. R. A. (N. S.) 391], the Supreme Court of Oklahoma, considering the right of a beneficiary to make election, ruled as follows: ''Therefore, we think it follows that the rights of the beneficiary are the same as if the insured had

defaulted, then, within the six months, elected to take, in settlement of his rights, an extension of the policy for such time as the net reserve in the Company's hands would pay for as a single premium, and that the sum recoverable is whatever the policy covenanted to pay, except as to participation in the profits prohibited by the statute." (See, also, 37 C. J. 510, 511, and cases there cited.)

The second objection urged by the appellant is that the beneficiary had no right or authority to pay off the loan, and therefore, that the tender made by her, and apparently shown to be good as a tender, was and is wholly inoperative. The argument in this particular is based upon the words found in the policy which we have heretofore set forth, to wit: "The whole, or any portion of the indebtedness may be repaid at any time while the policy is in force"; it being urged by the appellant that upon default in the payment of the premium due September, 1932, the policy was no longer "in force".

Again, the authorities show that this contention is untenable. What is called a "lapsed policy" is really a misnomer, if used to convey the idea that the policy is entirely forfeited or canceled as to all of its provisions. It is really a policy only upon which there has been a default in the payment of premiums, after premiums have been paid for three full years. The policy, by virtue of section 450 of the Civil Code, thereafter remains in force according to the provisions set forth in the section.

In *Knapp* v. *John Hancock Mut. Life Ins. Co., supra,* we find the following: "Under the provisions of the policy the insured was entitled to three options upon default in payment of the premium, to-wit: 1. To have the policy continued for a reduced amount as paid-up insurance, payable at the death of the insured. 2. To have the policy continued for its full amount as paid-up extended term insurance; or, 3. To receive the surrender value of the policy in cash, with a deduction in each case of the insured's indebtedness to the defendant."

The distinction is then drawn between what is called the "primary" insurance and the "secondary" insurance under the option provisions, and it is held that for all of the secondary provisions or secondary insurance, the policy is still in force. Likewise, in the case of *North Carolina Mut.*

*Life Ins. Co.* v. *Terrell*, 227 Ala. 410 [150 So. 318, 89 A. L. R. 1459], it is held that the policy remains in force until the expiration of the period for the exercise of the options contained therein, and then, as to the election that may be made. In that case, however, the court expressly withheld its ruling upon the right of the beneficiary to make an election of options.

Again, in *McEachern* v. *New York Life Ins. Co.*, 15 Ga. App. 222 [82 S. E. 820, 821], the same principle is upheld. It is there said: ''There were two forms of insurance provided for, primary and secondary. So long as the premiums were duly paid, the insured was entitled to the primary insurance, which, if carried to maturity, would have entitled the insured to certain accumulation benefit therein provided for, in addition to the face value of the policy. When the policy lapsed, as above stated, his right to primary insurance was forfeited, and the company's liability was remitted to the secondary insurance provided for in the nonforfeiture provisions above quoted, to-wit, paid-up insurance or extended insurance. During the 13 years preceding the lapse, the premium paid each year by the insured was not only paying for current insurance, but was building up a reserve to the policy, which paid for, and legally entitled him to, the secondary insurance guaranteed by the policy in case the lapse should occur by failure to pay premiums. He was as much entitled to the secondary insurance after the lapse as he was to the primary insurance prior to the lapse. He had paid for both.''

It is further held that this property right, if the election was not exercised by the insured prior to his death, might be exercised by his legal representative. (Citing the authorities which have heretofore been cited.)

█ While we have held that under the particular terms of the policy involved in this action, payment of the indebtedness might be made after default, as the terms of the policy read that such indebtedness may be paid at any time while the policy is in force, instead of reading, at any time before default in the payment of any premium, it does not follow that what has been termed ''primary insurance'' in the cases which we have cited became thereby reinstated. Such holding would be contrary to the express terms of the policy. Paragraph 7 of the instrument under consideration

precludes any such conclusion. Upon the failure to make payment of any premium as specified in the policy, and the expiration of thirty days' grace thereafter, primary insurance could only be reinstated as provided for in paragraph 7 of the policy. That paragraph reads: "If this policy shall lapse in consequence of nonpayment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Company, and the payment of all overdue premiums, with interest at six per centum per annum; any loan which existed at date of default, together with interest at the same rate to the date of reinstatement, to be, at the option of the owner on application for such reinstatement, either repaid in cash or continued as an indebtedness against the policy." No reinstatement was ever had or applied for by the insured. Thus, the rights of all of the parties became fixed at the date of the death of the insured as to both primary and secondary insurance, as those terms have been defined herein.

█ This brings us to a consideration of section 450 of the Civil Code, and the applicability of the three option clauses set forth in the policy.

As heretofore stated, the options set forth in paragraph 5 of the policy are predicated upon there being no indebtedness. The premise upon which the options are based reads: "If, however, the lapse occurs after three full years' premiums shall have been paid, the owner hereof, provided there be no indebtedness hereon, shall, upon written request filed with the company, at its office . . . be entitled to one of the following options:"

There having been an indebtedness against the policy involved in the instant case, no options are allowed by the policy. The basis laid down for the exercise of any of the options set forth in the policy being illegal, recourse must necessarily be had to the provisions of the Civil Code. The fact of indebtedness does not legally obviate the necessity of extending to the insured the exercise of one of the options specified in section 450, *supra*. The indebtedness goes only to a limitation of the amount of money available in the exercise of one of the options. Not having, as we have said, provided for an option in accordance with the laws of this state in its nonforfeiture provisions, there must be read into the policy the first provision of the section granting non-

participating term insurance. That provision reads as follows: ''First—Paid-up nonparticipating term insurance in the amount of the face of the policy, plus dividend additions, if any, for such a period as the net value outlined above will purchase at the net single premium, at the attained age of the insured at the time of the lapse, based upon the reserve basis described in the policy; provided, however, that under endowment contracts the term shall not extend beyond the endowment period named in the original contract, and the excess value, if any, shall be applied as a net single premium to purchase in the same manner paid-up pure endowment·insurance, payable at the end of the endowment period named in the contract if the insured be then living;''

Findings Nos. VII and VIII of the court are as follows:

''That $26.13 applied as a net single premium to purchase term insurance for $1,000.00 at the age of 57 years, calculated on the American Experience Table of Mortality and $3\frac{1}{2}\%$ interest would purchase said insurance for a term of 1 year, 96 days.

''That $26.13 applied as a net single premium to purchase term insurance for $1,000.00 at the age of 57 years, calculated on the Metropolitan Intermediate Table of Mortality and $3\frac{1}{2}\%$ interest would purchase said insurance for a period in excess of 3 months.''

Either one of these findings is sufficient to support the judgment upholding the right of secondary extended insurance on the life of the insured for the sum of $1,000, to a date subsequent to his death. There is no finding by the court, however, showing any sum available for the purchase of pure endowment in the sum of $382, or any other sum, unless we were to hold, directly contrary to the terms of the policy, that primary insurance had been reinstated by the offer of plaintiff to pay the indebtedness existing against the policy at the date of the death of the insured subsequent to the fixing of the rights of the parties under the terms of the policy as they existed at that date. Nor is there anything in the record showing the existence of any dividend additions, or the amount thereof if any such had accrued.

The statutes of the various states are so different in their terms that each case must in large measure be governed solely by local provisions. As we have said, also, there is a conflict of authority on the right of election by the legal representative of the insured, yet that question we think is settled in this state.

In view of what we have said it is not necessary to review all of the authorities cited by the appellant. We will, however, point out some of the distinctions.

In *Rustin* v. *Aetna Life Ins. Co. of Hartford, Conn.*, 98 Neb. 426 [153 N. W. 548], cited by the appellant, we find that where there was an indebtedness against the policy at the time of the death of the insured, the holding of the court was that the excess of the reserve over the indebtedness could properly be used in the purchase of extended temporary insurance. The only question there involved really was the amount of the reserve applicable for the purchase of extended insurance.

In *Dwyer* v. *Metropolitan Life Ins. Co.*, 132 S. C. 10 [159 S. E. 84], there had been no attempt to exercise the right of election or to secure temporary extended insurance.

In *Massachusetts Mutual Life Ins. Co.* v. *Jones*, 44 Fed. (2d) 540, it appears that the insured himself selected extended term insurance, and in ascertaining the amount available for the purchase of extended term insurance, it was held that the indebtedness against the policy should be properly charged against the cash surrender value in ascertaining the term of the extended insurance.

In the case of *McDonald* v. *Columbian Nat. Life Ins. Co.*, 253 Pa. 239 [97 Atl. 1086, L. R. A. 1916F, 1244], the court, as we have stated, held that the right of election was personal only to the insured, and not a property right descending to the beneficiary or representative of the insured. This holding, however, is contrary to the decision of the Supreme Court in the case of *Nielsen* v. *Provident Savings Life Assur. Soc. of New York, supra,* and the cases heretofore cited.

With the appellant entitled to receive the amount of money tendered in payment of the indebtedness on the insurance policy, it follows from what we have said that the sum of $382 should be stricken from the judgment. And it is so

ordered. As so modified the judgment will stand affirmed. Both parties will pay their own costs on appeal.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 17, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 17, 1934, and the following opinion then rendered thereon:

THE COURT.—The petition is denied. In denying said petition, we withhold our approval of that portion of said opinion relating to section 450 of the Civil Code.

Preston, J., voted for a hearing.