EVALYN Y. KNAPP, Respondent, v. JOHN HAN-COCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed February 5, 1924.

1. **INSURANCE: Life Insurance: Options: Election: Loan Agreement: Does Not Abrogate Insured's Right of Election.** A loan agreement of the insured *held* not to abrogate his right of election under option provisions of the policy as to paid-up insurance, extended term insurance, or the surrender value in cash.

2. ———: ———: **Policy: Loan Agreement: Construction.** A loan agreement must be read and construed in connection with the policy upon which it is ingrafted, and must be given a reasonable construction in consonance with the manifest purpose intended to be accomplished by it, and, wherein it would abrogate or cut down any right or interest of the insured under the provisions of the policy, and there is room for construction, it must be liberally construed in favor of the insured.

3. ———: ———: **Options: Election: Beneficiary Entitled to Elect as Between Options Given Insured.** Where under the provisions of a life insurance policy insured has sixty days after default in payment of premium to elect as between extended term insurance, paid-up insurance and cash surrender value, and died before the expiration of the sixty days without making an election, the right of election survives to the beneficiary.

4. **APPELLATE PRACTICE: Theory Pursued in Trial Court: Appellant Not Allowed to Take Different Position in Appellate Court.** Where on the death of the insured after default in the payment of premium, the insurer insisted upon its right to settle the policy on the basis of paid-up insurance, and took this position in the negotiations with the plaintiff for the settlement of the policy after the death of the insured, and persistently adhered to it throughout the trial of the cause in the court below, it will not be allowed to take a different position in the appellate court.

5. **INSURANCE: Life Insurance: Options: Election: Death of Insured Right of Election in Beneficiary: Time no Longer Essence of Contract.** Where insured, by the payment of annual premiums through a period of years, built up a reserve which was fairly and rightfully his, and by express convention he was entitled to have this reserve in cash, or to apply it to the purchase of paid-up insurance or extended term insurance as he might elect, such right of election was a valuable property right and not a mere privilege purely personal to him, and when it was established that the right of election was in plaintiff after the death of the insured, time was then no longer of the essence of the contract, and *held* under the state of facts disclosed by the record, an express election on the part of plaintiff to take extended insurance in settlement of the policy prior to the commencement of her suit was unnecessary and would have been worse than an idle ceremony.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. Charles W. Rutledge,* Judge.

AFFIRMED.

*Leahy, Saunders & Walther* for appellant.

(1) The terms of the loan agreement supersede the terms of the policy and are binding upon the parties. New York Life Ins. Co. v. Head, 234 U. S. 149; Cooper v. New York Life Ins. Co., 211 S. W. 548. (2) Upon default in premium, the provisions for paid-up insurance automatically went into force. Michigan Mutual Life Ins. Co. v. Mayfield's Admrs., 121 Ky. 839. (3) The policy contract being an Ohio contract, the loan agreement is not to be treated as an independent agreement, which cannot alter, change or modify the rights and obligations as they

existed under the original contract of insurance. Head v. Insurance Co., 241 Mo. 403; Burridge v. Insurance Co., 211 Mo. 158. (4) The contract of insurance involved in the controversy is a contract under and is to be construed and settled in accordance with the law of the State of Massachusetts. The Missouri statutes have nothing to do with the case. London Assurance v. Companhia de Moagens, 167 U. S. 149; Gibson v. Insurance Co., 77 Fed. 561; Indemnity Co. v. Mfg. Co., 95 Fed. 111; Insurance Co. v. Dingley, 100 Fed. 408. (5) The action of the trial court in refusing to give effect to the contract between the parties, evidenced both by the contract of insurance and the policy loan agreement, was a denial of the rights of appellant as guaranteed by article I, section 10 of the Constitution of the United States, which provides that no State shall pass any law impairing the obligation of contracts, and section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law, and of section 15 of article II of the Constitution of Missouri, which provides that no law impairing the obligation of contracts can be passed by the General Assembly, and section 30 of article II of the Constitution of Missouri, which provides that no person shall be deprived of life, liberty or property without due process of law, and of article IV, section 1, of the Constitution of the United States, the full-faith-and-credit clause.

*Myrtle B. Wood,* and *Atkinson, Rombauer & Hill* for respondent.

SUTTON, C.—This is an action upon a life insurance policy issued by defendant company on February 21, 1907. The provisions of the policy sued on, so far as pertinent to the issues for decision here, are as follows:

"The John Hancock Mutual Life Insurance Company of Boston, Massachusetts, in consideration of . . .

the premium of forty-five and 77/100 dollars, to be paid on or before the twenty-first day of February in each and every year, until the premiums for twenty full years shall have been paid, or until the prior decease of the insured, does insure the life of Robert A. Knapp, of Ironton, Ohio, in the amount of one thousand dollars, and promises to pay said amount at its home office, in Boston, upon satisfactory proof of the death of the said insured, to his wife Evalyn Y. Knapp, . . . deducting from said amount, any indebtedness to this company of the other parties to this contract.

"This policy shall not take effect until delivered and the first premium hereon paid during the lifetime and good health of the insured.

"In case any subsequent premium or installment thereof is not paid when due, . . . this policy shall become void except as hereinafter agreed.

"After three full annual premiums shall have been paid hereon, then, in case of default in the payment of any subsequent premium or installment thereof, the company will (there being then no existing indebtedness as aforesaid), after payment of premiums for . . . twelve full years, without any action on the part of the insured, continue this policy as participating paid-up insurance payable at death for . . . $592, or pay on legal surrender on any anniversary of its issue a cash value of . . . $342.01.

"On satisfactory assignment the company will loan on this policy such sum as, with one year's interest, will not exceed the surrender value.

"After this policy shall have been in force for three full years, then, in case of default in the payment of any premium or installment thereof thereafter due, the company will, upon the written request of the insured, together with satisfactory release of all interests and surrender of all rights and privileges held or granted under this policy (except to Term Insurance as hereinafter set forth) within sixty days from date of default, and provided there shall be no indebtedness to the company there-

under, continue this policy for its full amount, from date of default without grace, as Paid-up Extended Term Insurance (in lieu of the paid-up and cash surrender values originally granted) after the policy shall have been in force for . . . twelve full years, for the period of fourteen years and eighty-nine days.''

On November 20, 1918, a loan of $330 was made by the company to the insured, and a loan agreement was entered into, whereby the policy was ''assigned and transferred to said company as security for the repayment of said loan with interest at five per cent per annum,'' and whereby it was stipulated as follows:

''In case of default in the payment of said interest, or of any premium or installment thereof, on said policy, the company may terminate said insurance, subject to any provisions of law or of the policy prescribing the conditions under which this right may be exercised, and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance, when such insurance is provided for by the terms of the policy, or pay it in cash if those entitled to receive it so elect.''

It seems to be conceded that the rights of the parties are to be determined from a proper interpretation of the provisions of the policy and loan agreement as above set forth.

The insured paid twelve full annual premiums, defaulted in the payment of the premium due February 21, 1919, and died April 9th, following, without having made any election as to the options given in the policy.

An agreed statement of facts was put in evidence, from which we take the following:

''It is further stipulated and agreed, that at the time of default in the payment of premiums, the policy had a cash surrender value of three hundred forty-two dollars and one cent ($342.01), not taking into consideration any debt of the assured to the defendant.

''It is further stipulated and agreed, that; at the

time of default in payment of premiums seven dollars and one cent ($7.01) would purchase paid-up insurance in the sum of twelve dollars ($12) for a person of the age of the assured.

"It is further stipulated and agreed between the plaintiff and the defendant, that the net value of said policy on February 21, 1919, less the said loan and as-accrued interest, was $7.01, which said sum is and was sufficient to continue said policy for its full amount upon the life of the insured from said date of February 21, 1919, as paid-up extended term insurance for the period of 132 days from February 21, 1919."

On October 5, 1921, this suit was brought for the full amount of the policy with interest, less the amount of the loan and accrued interest.

The cause was tried to a jury. There was a verdict and judgment for plaintiff for $665, with interest amounting to $91.47, aggregating $756.47. The defendant appeals.

The defendant contends, (1) that the provision of the policy for a continuance of the policy as paid-up insurance, for a reduced amount, upon default in the payment of the premium, went into effect automatically upon the happening of the default, and that the insured having failed to make his election in his lifetime to take extended term insurance as he was entitled to do under the subsequent provision of the policy, the beneficiary could not make such election after the death of the insured, though such death occurred within the period of sixty days allowed by the policy for making such election, and that defendant is entitled to settle the policy for the amount of paid-up insurance which the residue of the surrender value of the policy after deducting the amount of the loan and interest, would purchase, and, (2) that under the provisions of the loan agreement, the plaintiff's right of election was abrogated and defendant was entitled to terminate the primary insurance, deduct the amount of the loan and accrued interest from the surrender value of the policy, and to apply the residue thereof

to the purchase of paid-up insurance, and that defendant is entitled to settle the policy on that basis, that is to say, by the payment of the amount of paid-up insurance which such residue of the surrender value of the policy would purchase. So that whether relying upon the provisions of the policy or upon the provisions of the loan agreement, defendant arrives at the same result.

Under the provisions of the policy, the insured was entitled to three options upon default in payment of the premium, to-wit, (1) to have the policy continued for a reduced amount as paid-up insurance, payable at the death of the insured, (2) to have the policy continued for its full amount as paid-up extended term insurance, or (3) to receive the surrender value of the policy in cash, with a deduction in each case of the insured's indebtedness to the defendant. [Stark v. John Hancock Mutual Life Ins. Co., 176 Mo. App. 574, 159 S. W. 758.] The loan agreement did not abrogate the insured's right of election under these options. It did not disturb his right to elect which form of secondary insurance, if either, he would take upon the termination of the primary insurance. The loan agreement must be read and construed in connection with the policy upon which it was ingrafted. It must be given a reasonable construction in consonance with the manifest purpose intended to be accomplished by it, and, wherein it would abrogate or cut down any right or interest of the insured under the provisions of the policy, and there is room for construction, it must be liberally construed in favor of the insured. The manifest purpose of the agreement was to evidence the loan and secure its repayment with interest. To achieve this purpose there was no necessity to abrogate or alter the options given the insured under the provisions of the policy. The value of the security pledged to defendant in the assignment of the policy was the same whether the insured elected to take paid-up insurance, extended term insurance, or the surrender value of the policy in cash. The loan was not a gratuity or favor to the insured. He was entitled to it under the express terms of the primary con-

tract. It was secured by gilt-edge collateral in the assignment to defendant of its own contract of insurance, having a cash surrender value exceeding the amount of the loan, and was compensated in the payment of interest at the rate of five per cent per annum. No reason suggests itself, and none is suggested by counsel, why the insured, in consideration of procuring this loan, should have given up any beneficial right or interest he had under the provisions of the primary contract, not necessary to secure the repayment of the loan, nor tending to subserve that end. To so construe the loan agreement that it would have this effect would be to give it a construction that is unreasonable and out of harmony with the manifest purpose of the agreement.

If the loan agreement does not expressly say that the insured is entitled to elect whether he will take, in lieu of the primary insurance terminated for default in payment of the premium, paid-up insurance, or extended term insurance, the primary contract does so say, and the loan agreement, it is certain, does not say the contrary. Reading the policy and the loan agreement together, and as a whole, and construing them together as one instrument, we entertain no doubt that the insured was upon default in payment of the premium entitled to whichever form of secondary insurance he might elect to take in lieu of the primary insurance lapsing by reason of his default, and that he was entitled to sixty days within which to make his election.

The insured died, however, within the sixty days allowed for making his election, without having made such election, and the crucial question in this case is whether or not the beneficiary was entitled to make such election after his death. It is conceded that at the time the insured defaulted in the payment of the premium, the net value of the policy, less the loan and accrued interest, was sufficient to continue the policy for its full amount as extended insurance for a period of 132 days, and that the insured died within that period.

It is very generally held, in cases where the options given in the policies were substantially the same as in

the policy under review in the instant case, that the right of election under the options given, is a property right, not a mere privilege purely personal to the insured, and that in case the insured die after default and within the period allowed for making his election, the right of election survives to the beneficiary. We think the holding is founded upon the soundest sort of judicial reasoning. [Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 721, l. c. 726; McEachern v. New York Life Ins. Co., 15 Ga. App. 222, l. c. 231; State Mutual Life Ins. Co. v. Forrest, 19 Ga. App. 296; Nielsen v. Provident Savings Life Assurance Society, 139 Cal. 332, l. c. 338; Wheeler v. Connecticut Mutual Life Ins. Co., 82 N. Y. 543, l. c. 554; New York Life Ins. Co. v. Noble, 34 Okla. 103; Dorr v. Phoenix Mutual Life Ins. Co., 67 Me. 438; Lenon v. Mutual Life Ins. Co., 80 Ark. 563, l. c. 567, 98 S. W. 117.]

A different conclusion was reached, however, in Michigan Mutual Life Ins. Co. v. Mayfield's Admrs., 121 Ky. 839, l. c. 843, 90 S. W. 607, wherein it was held that the provision of the policy for paid-up insurance automatically became operative upon default in payment of the premium, and that the insured having died without making his election, his personal representative could not do so after his death, though the insured died within the period allowed for making his election. We are asked to apply the views expressed in that case to the case at bar. To do so we would have to resort to a highly technical construction of the contract entirely out of harmony with the wholesome rule of liberal construction in favor of the insured and strict construction against the insurer, so long adhered to with unremitting fidelity by the appellate courts of this State.

Defendant's counsel rely upon New York Life Insurance Company v. Head, 234 U. S. 150, as decisive of this case. The loan agreement under decision in that case provided that it should be payable at the home office in New York, and that if any premium on the policy were not paid when due, settlement of the loan and of any

other indebtedness on the policy should be made by continuing the policy without further notice as paid-up insurance for a reduced amount according to the New York Statute. No option or right of election on the part of the insured was allowed or recognized. By the express language of the loan agreement, the pledge was automatically foreclosed and the policy continued for a reduced amount as paid-up insurance upon default in payment of the premium. The distinction between the provisions of the loan agreement in the Head case and the provisions of the loan agreement in the instant case is too obvious for discussion. Besides, in the Head case, upon default in payment of the premium on the policy, and pursuant to the terms of the loan agreement and the New York Statute, the policy was settled on the basis of paid-up insurance, and the policy was at the request of the insured sent to him prior to his death and was in his possession at the time of his death, whereas, in this case, no steps were taken to foreclose the pledge under the loan agreement prior to the insured's death.

The defendant insists, however, that the insured made his election to settle the policy for its cash surrender value after he had defaulted in the payment of the premium. There was some correspondence between the insured and defendant looking to the settlement of the policy for its cash surrender value. These negotiations were terminated by the death of the insured. The transaction did not amount to such an election as will preclude the recovery now sought. It is unnecessary to set out this correspondence for the reason that the defendant never at any time relied upon this transaction as a defense to this suit, but has since the death of the insured always insisted upon its right to settle the policy on the basis of paid-up insurance. The defendant took this position in the negotiations with plaintiff for the settlement of the policy after the death of the insured and persistently adhered to it throughout the negotiations with the plaintiff and throughout the trial of the cause in the court

below.  It may not now be allowed to take a different position in this court.

Defendant further insists that though the right of election under the options given in the insurance contract was a property right of the insured, not purely personal to him, and that upon his death such right of election survived to the plaintiff as beneficiary under the policy, yet since the plaintiff did not make her election within sixty days after default in payment of the premium, she was precluded from thereafter making such election, and that therefore the defendant is entitled to settle the policy on the basis of paid-up insurance.  The insistence is without merit.  Once it is established that the right of election was in the plaintiff as beneficiary under the policy after the death of the insured, it must follow as the night the day that time is then no longer of the essence of the contract.  [Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 721, l. c. 726.]

On April 30, 1919, plaintiff wrote defendant, informing it of the death of her husband and of her own distressing financial needs, and inquiring whether it was not possible for her to receive more on the policy than the very small sum due on a cash surrender value basis, in which letter she also advised defendant that it had been impossible for her to notify defendant sooner of the death of her husband on account of the fact that she had been very ill ever since his death.  To this letter defendant replied, in a letter written on May 2nd, followed by another on May 8th, advising plaintiff that since the insured defaulted in the payment of the premium, the policy had lapsed, and that the amount due under the policy was $12, which was the amount of paid-up insurance purchased by the balance of the cash surrender value of the policy after deducting the loan and accrued interest, and that this was the amount for which she might make claim. On May 27th, plaintiff's attorney wrote defendant asking for a copy of the policy.  A photographic copy of the policy was sent to plaintiff on June 3rd.  On June 18th, plaintiff's attorney wrote defendant demanding payment

for the face amount of the policy as extended insurance, less the loan. Afterwards there was a large amount of correspondence between the plaintiff's attorney and the defendant, relating to the amount of defendant's liabilit/ on the policy in which defendant adhered to its contention that it was entitled to settle the policy on the basis of paid-up insurance. On October 29th, plaintiff forwarded to defendant a formal election in writing to receive the extended insurance provided for in the policy and demanded payment for the face amount of the policy, less the loan and accrued interest. Plaintiff testified that she did not make her election to take extended insurance under the policy at an earlier date because she did not know that she had the right to do so. It is manifest that the plaintiff was ignorant of her rights under the policy, and that defendant's letters had no tendency to enlighten her on the subject. She did not have possession of the policy or a copy thereof until June 3rd, and June 18th her attorney made demand on defendant for the face amount of the policy as extended insurance, less the loan, and on October 29th, forwarded to the company a formal written election. We think the record discloses a state of facts amply sufficient to excuse the plaintiff's delay in making her election to take extended insurance under the policy, if indeed any such election on her part were at all necessary to her right of action.

In the view we take of the law of this case, however, an express election on the part of the plaintiff to take extended insurance in settlement of the policy, prior to the commencement of her suit was entirely unnecessary. The insured by the payment of annual premiums through a period of twelve years built up a reserve which was fairly and rightfully his. By express convention he was entitled to have this reserve in cash, or to apply it to the purchase of paid-up insurance, or extended term insurance, as he might elect. This right of election was a valuable property right and not a mere privilege purely personal to him. The right survived to the plaintiff as beneficiary under the policy upon the death of the in-

sured. The right of the plaintiff to elect whether she would receive in settlement of the policy $12, or $665, amounted to nothing less than an immediate suable demand for the larger sum. For the plaintiff to go through the performance of formally notifying the defendant that she elected to take $665 in preference to taking $12 in settlement of the policy, would have been worse than an idle ceremony. [Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 621, l. c. 726; Head v. New York Life Ins. Co., 241 Mo. 403, l. c. 418, 147 S. W. 827.]

We entertain no doubt that the case was rightly adjudged in the trial court, and the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J.,* and *Becker* and *Daues, JJ.,* concur.