# OCTOBER, 1939.

MARY FITZSIMMONS, APPELLANT, v. AMERICAN UNION LIFE INSURANCE COMPANY, RESPONDENT.—133 S. W. (2d) 680.

Kansas City Court of Appeals.   October 30, 1939.

*Harry A. Hall* and *Wm. R. Ross* for appellant.

880

*Brown, Douglas & Brown* and *A. L. Guitar* for respondent.

SHAIN, P. J.—This is an action on two life insurance policies issued on the life of Roy Fitzsimmons, deceased. Mary Fitzsimmons, the beneficiary in both policies, brings this suit against the American Union Life Insurance Company.

Plaintiff's suit is in two counts: The first count declares upon a policy for $2000 issued by defendant on May 20, 1915; and the second count declares upon a policy for $3000 issued by defendant on July 22, 1915.

Due proof of death stands admitted and the controversy involves construction of provisions and conditions in said policies as follows:

"Any indebtedness to the Company, including any balance of the current year's premium remaining unpaid, will be deducted in any settlement of this policy.

NON-FORFEITURE PROVISIONS.

"After payment of premiums for three or more full years the following options shall be effective:

"PAID-UP AND EXTENDED INSURANCE—Upon written request for either non-participating paid-up or extended term insurance, at any time prior to, or within sixty days after default in payment of premium, the company will, after such default, either continue this policy for a reduced amount of non-participating paid-up insurance in accordance with the accompanying table, or extend and continue in force the full amount of this policy as non-participating term insurance in accordance with the accompanying table.

"CASH SURRENDER VALUE—Any time within sixty days after default in payment of any premium the Company will, upon request, with a full and valid surrender of the policy and all claims there-

under, pay a cash surrender value in accordance with the accompanying table, less any existing indebtedness to the company on acount of this policy.

"Loans—If this policy be not then extended as term insurance the Company will advance, on proper assignment of this policy and on the sole security thereof, at a rate of interest not exceeding six per centum per annum, subject to the laws of the State in which the insured resides at time of issuance of this policy a sum equal to, or, at the option of the insured, less than the amount stated in the accompanying table.

(Table appears here)

"General Provisions and Privileges.

"6. Any indebtedness to the Company, including loans and interest accumulations, and any balance of the year's premium remaining unpaid, will be deducted in any settlement under this policy."

On policy No. 714 for $2000, declared upon in count No. 1, the last premium was paid on June 21, 1927, for the policy year ending May 20, 1928.

On policy No. 816 for $3000, declared upon in count No. 2, the last premium was paid on August 13, 1927, for the policy year ending July 22, 1928.

The facts shown by the record, as to policy No. 714 for $2000, are that "on or about the twelfth anniversary of policy No. 714, May 20, 1927, the insured borrowed $696 from the defendant, and assigned and pledged policy No. 714 to the defendant according to the terms of a collateral security note executed by the insured and the appellant as beneficiary in that policy, dated May 20, 1927, according to the terms of which the makers of the note promised to pay the loan on or before May 20, 1928 (the thirteenth anniversary of policy No. 714). Said note contained the following provision:

"Which amount with interest thereon from maturity at the rate of six per cent per annum, shall, unless sooner paid, be deducted by the company, in the event of my death or surrender of policy No. 716, from the amount payable on said policy, and shall be a lien and charge thereon; and said policy is hereby assigned to said St. Joseph Life Insurance Company as collateral security for the payment of the above named sum.' ''·

The facts shown by the record as to policy No. 816 for $3000 are that "on or before July 22, 1927, the twelfth anniversary of policy No. 816, the insured borrower of the respondent $1,045.28, and assigned and pledged policy No. 816 to the respondent as security

for the repayment of that sum, in accordance with the provisions of a collateral security form of note identical in form with the note above described in connection with policy No. 714, signed by the insured and appellant as beneficiary of policy No. 816, in which they promised to pay the sum of $1,045.28, on or before July 22, 1928, the thirteenth anniversary of policy No. 816." The same provision appearing in the first note appears in the second.

It appears that the insured left the State of Missouri in 1927 and never returned. His death occurred October 13, 1932. After death of insured, the plaintiff herein notified the company and made demand for payment on the policies. The defendant declined to make payment upon the stated grounds that the policies had lapsed and expired in accordance with the contractual transaction between the parties prior to death of insured.

There is a letter in evidence that was sent to and admittedly received by plaintiff under date of June 27, 1928. Said letter is as follows:

"Mrs. Mary Fitzsimmons
"Conception Junction, Missouri
"Dear Mrs. Fitzsimmons:
"Re: Policies #714 and #816—Roy Fitzsimmons.
"In regard to the two policies which your husband took out, one on May 20, 1915—#714 and the other on July 22, 1915—#816, I have looked up the policies and find that after the loan value has been deducted from the cash value, policy #714 has four months and twenty-three days extended insurance value, commencing May 20, 1928. If the premium on policy #816 is not paid July 22, 1928; or during the grace period, it will have the same period of extended insurance.

"Trusting this gives you the desired information in regard to the present status of these two policies on your husband's life, I am

"Yours very truly

"President

ALM:G"

The plaintiff never replied to this letter.

Both counts of plaintiff's petition consist of a plain and concise statement of causes of action on the two policies. They contain no references to the matters of loans evidenced by notes given company as collateral security. Plaintiff asks judgment for full amount on extended insurance, for penalties, and for attorney fees based upon allegation of vexatious delay.

Trial was before the court without a jury, finding was for defendant, judgment was in accordance with the court's finding, and from said judgment the plaintiff appealed.

We will continue to refer to parties as plaintiff and defendant.

The plaintiff's contention is expressed in the assignment of errors which are as follows:

## "I.

"The court erred in holding that the defendant insurance company could deduct the note indebtedness from the cash values of the policies when they were continued as extended term insurance, and in refusing plaintiff's requested declarations of law Nos. 3, 4 and 5 to the effect that such deduction could not be made under the law and the terms of the notes and policies.

## "II.

"The court erred in holding that upon lapse of the policies the company could cancel them and satisfy the note indebtedness from the policy cash values.

## "III.

"The court erred in holding that the insurance was not in force as extended term insurance when the insured died and in refusing plaintiff's requested declarations of law Nos. 2, 5, 7 and 8 to the effect that under the law the policies were in force at that time as extended term insurance."

## OPINION.

The cash surrender value of the $2000 policy (No. 714) after premiums have been paid for thirteen years is shown to be $710 and the extended paid-up insurance is indicated as for $1300. As to the policy for $3000 (No. 816) cash surrender is shown as $1065 and the paid-up insurance as $1950.

The insured borrowed money from the defendant company and placed the policies with the company as *collateral security*. To further secure these notes the plaintiff herein, the beneficiary in the policies, signed said notes with the insured.

The note on which policy No. 714 was placed as collateral security reads as follows:

"On or before May 20, 1928 after date, I promise to pay to the order of

## "ST. JOSEPH LIFE INSURANCE COMPANY

"Six Hundred Ninety-Six and 85/100.........Dollars payable at the office of the St. Joseph Life Insurance Company, St. Joseph, Missouri, which amount, with interest thereon from maturity at the rate of six per cent per annum, shall, unless sooner paid, be deducted by the Company in the event of my death or surrender

of Policy No. 714 from the amount payable on said policy, and shall be a lien and charge thereon; and said policy is hereby assigned to said St. Joseph Life Insurance Company as collateral security for the payment of the above named sum. If any portion of the interest remain unpaid after it is due, it shall be added to and become part of said principal.

"Roy Fitzsimmons
"Insured
"Mary Fitzsimmons
"Beneficiary"

The note on which policy No. 816 was placed as collateral security reads the same as the above note except as to date of execution being July 22, 1927, and amount being $1045.28.

The notes were placed in evidence by the defendant. No credits appear on the notes and nothing to show cancellation of same.

The two policies were introduced in evidence by the plaintiff. Each policy contains the provisions set out above. Policy No. 714 is marked as Exhibit A and policy No. 816 is marked as Exhibit B. Policy No. 714 indicates a 13th year cash surrender or loan value of $710 or extended insurance in the amount of $1300 for a period of seventeen years and five months. Policy No. 816 indicates a 13th year cash surrender or loan value of $1065 or extended insurance in the amount of $1950 for a period of seventeen years and five months.

The policies in issue appear to have never been surrendered other than as collateral security, and there is nothing showing cancellation or settlement appearing on the face of the policies.

With the above facts before us, we restate the issue: The plaintiff contends that under the facts and circumstances in evidence she is entitled to the full paid-up insurance, to-wit, $1300 on policy No. 714 and $1950 on policy No. 816, less the amount of the notes and interest thereon to date.

The defendant's contention is shown by the following paragraphs in the answer, to-wit:

"Defendant states that after such default in payment of the premium on said policy due May 20, 1928, as aforesaid, it deducted from the thirteenth anniversary reserve (cash surrender or loan) value of $710, provided in said policy, the amount owing to it by the insured and the plaintiff on account of the loan evidenced by the note aforesaid for which the said policy was so pledged as security, in satisfaction of the lien and charge on said policy granted by the terms and provisions of said note, leaving a net reserve (cash surrender or loan) value of $13.15, sufficient to purchase extended insurance in the sum of $2000, the face amount of said policy, at the premium rate provided in said policy for a period of four months and twenty-three days, to-wit, until October 13, 1928, and after

such default for more than thirty days in payment of said premium due on May 20, 1928, the defendant in accordance and compliance with the provisions of said policy and the laws of the State of Missouri, extended said policy of insurance for said sum of $2000 to the 13th day of October, 1928, when the same lapsed, expired and became without further force and effect on account of non-payment of premiums.

"The defendant states that by reason and on account of the facts hereinabove recited, said policy had lapsed and was of no force and effect on the 13th day of October, 1932, the date of the death of the insured, as alleged in plaintiff's petition."

Disposition of policy No. 816 is shown to be same as above except as to date and amount.

Plaintiff's assignments of error go to the findings of facts and declarations of law by the court, based upon the issues as above set forth.

We conclude, that in the absence of an express agreement otherwise, the first fundamental principles of law to be applied at arriving at a correct solution of the issues involved are expressed in an opinion by the Supreme Court of Missouri in a paragraph from its opinion in Smith v. Mutual Benefit Life, 72 S. W. 935, l. c. 939, as follows:

"By virtue of the policy and the premium, the parties stood in the relation of insurer and insured, and the law of insurance governed them in that relation; but when the assured borrowed money of the insurer and assigned the policy as collateral security, the law governing their rights in that respect is the same as if he had borrowed the money from a bank, and given it the same collateral. In such case the bank would have been entitled to a lien on the proceeds of the policy, but not to appropriate to itself the premium which was to keep the policy alive."

Along the same line as above, the Supreme Court in Richardson v. Ashby, 33 S. W. 806, l. c. 807, says:

"Nonpayment of the original debt at the stipulated time does not work a forfeiture of the pledge, either by the civil or at the common law. No title to or ownership in the collateral by forfeitures inures to the benefit of the pledge by the maturity of the debt, or by the lapse of time. . . . Title and ownership of the pledge, when the subject of it consists of ordinary goods and chattels, remain in the pledgor. The pledgee takes only a lien on it as security for his debt, and is bound to keep and use it in a manner so as not to impair or destroy its value."

An example of a case that by the direct language of the contract removes it from the application of the above fundamental principles is found in Knapp v. Life Ins. Co., 214 Mo. App. 151, 259 S. W. 862. However, in the Knapp case a judgment for plaintiff was sustained for reason of grounds hereinafter set forth.

The facts and the loan agreement in the Knapp case are as follows:

"On November 20, 1918 a loan of $330 was made by the company to the insured, and a loan agreement was entered into, whereby the policy was 'assigned and transferred to said company as security for the repayment of said loan with interest at five per cent per annum,' and whereby it was stipulated as follows:

"'In case of default in the payment of said interest, or of any premium or installment thereof, on said policy, the company may terminate said insurance, subject to any provisions of law or of the policy prescribing the conditions under which this right may be exercised, and may deduct the indebtedness hereby secured from the amount which would otherwise be the surrender value of the policy, and apply the residue thereof, if any, to the purchase of paid-up or extended insurance, when such insurance is provided for by the terms of the policy, or pay it in cash if those entitled to receive it so elect.'"

Under such an assignment, transfer and agreement as above expressed, the insurance company not only had an option but was also given property right in and to the policy itself.

Under the policies involved in the case at bar, any option provided is expressed as "upon written request" or "request". No written request is shown and no oral request is proven.

In the notes in issue herein, the provisions for deduction of past due notes are expressed "be deducted by the company in the event of '*death* or *surrender* of policy.'" (Italics ours.) It is expressed in the notes that the policies were assigned as collateral security for the payment of the debt.

The date of death for the purposes of this case is conceded to be as of October 13, 1932.

We conclude from a careful reading of the record that the policies in question were never surrendered by the insured or by the plaintiff in any settlement had between the parties.

Referring back to the Knapp case, *supra,* the policy involved therein gave an option to insured of sixty days after default in premium in which to elect as to cash surrender or extended insurance. Based upon the fact that the insured died prior to expiration of sixty days, the appellate court affirmed a judgment for plaintiff for full face value of policy, less the indebtedness. The court held that the loan agreement in that case did not abrogate insured's rights of election under the policy.

We conclude that the act of the defendant company in deducting from cash value of policies the amount due on notes and giving extended insurance for surplus is not in compliance with any reasonable construction of the policies issued by defendant and held by defendant as collateral security.

We further conclude that there is no language in the notes,

whether taken separately or in conjunction with the provisions of the policies, that justify the aforesaid action.

The provisions of the policy under which the defendant presumed to act are as follows:

"CASH SURRENDER VALUE—Anytime within sixty days after default in payment of any premium the Company will, upon request, with a full and valid surrender of the policy and all claims thereunder, pay a cash surrender value in accordance with the accompanying table, less any existing indebtedness to the company on account of this policy."

The evidence discloses no *request*. The evidence does not disclose *a full and valid surrender of the policy and all claims thereunder* as per any request.

Even though it could be considered that the defendant company had authority to act without a request, it still follows that by the action taken by the defendant it did not follow the provisions as set forth in the above claims, in that the company disposed of part of the cash surrender value in payment of notes owing the company, and part of the cash surrender value in extended insurance. In other words, the defendant assumed the authority to proceed on the theory that it had the authority to exercise its option as to one provision of the policy, to-wit, cash surrender, and proceeded to take advantage, in a way, also of the *other asserted option, to-wit, extended insurance.*

The defendant urges provisions of section 5741, Revised Statutes of Missouri, 1929.

It is declared in Head v. New York Life Ins. Co., 227 S. W. 429, that the settlement and computation of reserves and deductions after loans to insured must be under the language of the policy and loan agreement, despite non-forfeiture statutes.

The defendant urges its contention on the theory that there was a settlement in addition to its assertion of termination of all matters involved as under the express terms of the contract. Suffice it to say, that settlement involves the meeting of minds.

The defendant urges that its failure to communicate with the insured was due to the fact of want of knowledge as to insured's whereabouts. Defendant urges the point that its letter to plaintiff (beneficiary in the policies) duly notified her of the steps proposed to be taken and that by her silence virtue is added to its interpretation of the contract. As to such position, there is no showing that plaintiff ever had possession of or had knowledge of the provisions of the policies at the time.

Such rights of election or otherwise as insured had under the policies involved up to the time of his death inured to plaintiff as beneficiary and we conclude that no right, if any, that survives

to her can be or is affected by aforesaid letter and her failure to respond to said letter.

On the question as to "adjustment" and "settlement" defendant cites People v. Green (N. Y.), 5 Daly 194, and other citations from other States wherein different phases of these terms are discussed. Our conclusion as to adjustment or settlement is drawn from the facts and circumstances before us and the legal significance of these words as applied to the facts of this case and, we conclude, must be construed as including mutuality between the parties.

Defendant cites Bush v. Block, 193 Mo. App. 704. The suit in said case was in equity wherein the assignee of an insurance policy assigned to secure a debt of one Block which he had failed to pay, sought to foreclose the interest of Block in said policy. In said case the insurance company was not a party and was declared by the court not to be a necessary party.

The language of judicial opinions must be construed with consideration of issues involved. If defendant had brought a suit in equity at time of default in premium to enforce its lien on the policies, the above authority might have been in point in some respects. However, defendant did not so proceed. We conclude that defendant itself proceeded to adjust all matters involved upon its interpretation of the provisions of the policies and notes. We conclude there is nothing in the opinion in the Bush v. Block case, *supra,* which sustains defendant in its so-called adjustment.

Defendant cites authority to the effect that the rights of an assignee of pledge of a policy are upheld by our courts. Such is Horn Book Law. However, courts are often called upon to conclude as to such rights and must give interpretation in accordance with the provisions of the contract involved.

Defendant cites cases as to computing reserve, surrender and loan values provided in policies and insists that the computation as made by the company is more favorable than that provided in section 5741, Revised Statutes of Missouri, 1929. None of the cases cited justify such action as was taken by defendant in the case at bar. The cases cited deal with correct computation as provided by the particular contract in issue. The question in the case at bar is not as to computation, but involves the question of the defendant's right under the contracts to proceed as it did, i. e., to make within itself an adjustment, under its interpretation of the contract, on part cash basis sufficient to pay the notes and on extended insurance as to the surplus.

Defendant cites cases as to burden of a plaintiff to make proof that surplus is sufficient to extend insurance to the time of death. Such is not the issue in this case. It stands undisputed that the policies, according to extended insurance tables therein, had suf-

ficient reserve to give extension long beyond the period of the insured's death.

Again we repeat the issue to be: Did the company under the contract have the right to apply privilege of cash surrender and privilege of extended insurance so as to apply the cash surrender value as to the notes and extended insurance of balance.

Our conclusion, based upon the premises as set forth above, impels us to answer the above question in the negative.

The plaintiff herein has cited many authorities that we find we need not discuss for the reason that said authorities while throwing some light upon the issues, are distinguishable from the facts of this case.

The defendant in its brief has clearly pointed out the distinguishing features in these cases cited by plaintiff.

As we base our conclusions of the issues herein upon the fundamental law as expressed in Smith v. Mutual Life Ins. *supra,* and other authorities cited, quoted and discussed in the opinion, we conclude that further comment is not necessary.

For the reasons above set forth, the judgment is reversed and cause remanded with instructions for the trial court to render judgment for plaintiff on both counts for the amounts indicated in the policies to be paid on extended insurance, less debts and interest as evidenced by the notes for which said policies are held as collateral security.

The matters of penalties and attorney fees are in issue and evidence as to said issues is shown in the record. However, as such matters have not been passed upon by the trial court, said matters are left to be determined by said court on rehearing.

We note here, for clarity, that the defendant by its action prior to the bringing of this suit had changed its name from ''St. Joseph Life Insurance Company'' to the name as designated in caption. All concur.